IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ALBERT JASO,<br><br>                Plaintiff,<br><br>   vs.<br><br>DAWSON COUNTY SHERRIFFS<br>OFFICER SCHLEMAT, SHERIFF<br>JAILOR CASTELLANO, SHERIFF<br>OFFICER AREA, and UNKNOWN<br>UNNAMED DEFENDANTS,<br><br>              Defendants. | **4:19CV3106**<br><br><br><br>**MEMORANDUM**<br><br>**AND ORDER** |

Plaintiff, Albert Jaso, a state prisoner, filed his pro se Complaint (Filing 1) on October 28, 2019, and subsequently was granted leave to proceed in forma pauperis. After Jaso paid the required initial partial filing fee on February 12, 2020, the court conducted an  initial review of the Complaint and determined that it failed to state a claim upon which relief may be granted. In a Memorandum and Order entered on February 19, 2020 (Filing 12), the court on its own motion gave Jaso 30 days (*i.e.*, until March 20, 2020) to amend his pleading.

On March 23, 2020, the clerk of the court received a pro se Amended Complaint (Filing 16) from Jaso via the United States Postal Service. The mailing is postmarked March 20, 2020, and the signed certificate of service is dated March 18, 2020. Such filing was timely under the "prison mailbox rule." *See United States v. Harrison*, 469 F.3d 1216, 1217 (8th Cir. 2006) ("Under the prison mailbox rule, a pro se pleading is deemed filed upon deposit in the prison mail system prior to the expiration of the filing deadline."); *Epp v. Frakes*, No. 4:16CV3176, 2017 WL 2608694, at *1 (D. Neb. June 15, 2017). Accordingly, the court now conducts an initial review of the Amended Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. SUMMARY OF AMENDED COMPLAINT

Jaso alleges in his Amended Complaint that while he was confined at the Dawson County Jail in Lexington, Nebraska, on May 13, 2019, he was assaulted by two officers, Area[1] and Schlemat, while a third officer,[2] Castellano, watched and may have participated in the assault. (Filing 16, ¶¶ 8-10.) These three officers are alleged to be employees of the Dawson County Sheriff's Department, and are being sued in their individual and official capacities. (*Ibid.*, ¶¶ 4-6.) Jaso also sues unknown, unnamed jail employees who allegedly failed to protect him from the use of excessive force or who may have actively participated. (Ibid., ¶¶ 7, 10.)

Jaso alleges: "Schlemat started to assault me for no reason, I had to defend myself." (*Ibid.*, ¶ 8.) Area allegedly threw Jaso against a wall and a cell door. (*Ibid.*, ¶ 20.) Jaso alleges that Area and Schlemat struck him numerous times with their fists, knees, and elbows until he lost consciousness. (*Ibid.*, ¶ 21.) Castellano allegedly remained outside the cell and did not intervene to protect Jaso. (*Ibid.*, ¶ 23.) Jaso believes Castellano and unknown, unnamed officers may also have kicked and struck him while he was down. (*Ibid.*, ¶ 10.) Jaso alleges he "did not resist or threaten the officers in any fashion or break any jail rules, he was only trying to protect himself from being struck." (*Ibid.*, ¶ 12.)

Jaso alleges that during the assault he received an injury to his shoulder, a split nose, a cracked tooth, lacerations to his face and scalp, and numerous abrasions to his arms, legs, torso, face, and head. (*Ibid.*, ¶¶ 22, 26.) He allegedly was placed in a holding cell for 96 hours before being taken to a hospital for medical treatment. (*Ibid.*, ¶ 24.) Jaso alleges he was not taken to the hospital until after his sister filed a formal complaint with the Sheriff's office. (*Ibid.*, ¶¶ 14, 25.)

---

[1] The caption to the Amended Complaint has a handwritten insertion of "B." before Area's name. Because of the period after the letter B and the lack of any other insertions in the Amended Complaint, the court assumes this is a first initial and not a correction to the surname.

[2] Jaso describes Castellano as a "jailor" rather than an "officer," but does not allege that Castellano had any supervisory authority over the other Defendants.

Jaso twice alleges that "Schlemat and Area have repeatedly engaged in excessive force against inmates in the past." (*Ibid.*, ¶¶ 11, 13.)

Jaso alleges that "[a]fter the assault by the officers, and after contacting the Ombudsman's office, he was moved to the Lincoln Diagnostic and Evaluation Center in Lancaster County, Nebraska. (*Ibid.*, ¶ 16.) Jaso also alleges he "was later moved from the County Jail because of multiple threats made by Officer Schlemat with more bodily harm like he did before." (*Ibid.*, ¶ 17.)

Jaso alleges he is currently being seen by a psychologist for treatment of post-traumatic stress disorder. (*Ibid.*, ¶ 18.) He alleges: "I'm afraid for my life because these defendants did this because of my recent charges I am going to court for now" (*Ibid.*, ¶ 19.)

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *28* U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint

must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Id.*, at 849 (internal quotation marks and citations omitted).

### III. DISCUSSION OF CLAIMS

Jaso indicates he is seeking to recover damages under 42 U.S.C. § 1983 for "excessive use of force, denial of medical care and failure to protect in violation of the Eighth Amendment to the United States Constitution," and also under state law for "the torts of assault and battery and negligence." (Filing 16, p. 1.) The only named Defendants are Schlemat, Castellano, and Area, but claims made against these officers in their official capacities are, in effect, made against Dawson County. *See Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."); *Parrish v. Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992) ("A plaintiff seeking damages in an official-capacity suit is seeking a judgment against the entity.").

Unknown, unnamed Defendants are alleged to have been "employed during the events decribed [*sic*] in this complaint" (Filing 16, ¶ 7), but are not otherwise identified. "It is generally impermissible to name fictitious parties as defendants in federal court, but 'an action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery.'" *Perez v. Does 1-10*, 931 F.3d 641, 646 (8th Cir. 2019) (quoting *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)). The allegations in Jaso's Amended Complaint regarding these unknown, unnamed Defendants are not sufficiently specific to satisfy the exception to the general prohibition against fictitious parties. *See id.* The Amended Complaint "does not sufficiently allege who [these] Defendants are, what they allegedly did, what their position is for the [County], or any other facts that would permit [them] to be noticed or identified through discovery." *Id.* All claims alleged against the unknown, unnamed Defendants will therefore be dismissed without prejudice. *See, e.g., Roe v. Nebraska*, No. 4:15CV3071, 2015 WL 6159212, at *4 (D. Neb. Oct. 20, 2015) (dismissing claims alleged against unknown "agents and employees" of the State), *aff'd*, 861 F.3d 785 (8th Cir. 2017).

## A. Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Local government units, such as counties, are considered "persons" under § 1983, but may only be held liable for violations that result from an official policy or custom. *See Scheeler v. City of St. Cloud*, 402 F.3d 826, 832 (8th Cir. 2005).

### 1. Excessive Force

Jaso claims Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment, but the allegations of the Complaint do not reveal whether Jaso was a pretrial detainee or a convicted prisoner at the time of the alleged incident. Although "the Eighth Amendment has no application" until there has been a "formal adjudication of guilt," the Fourteenth Amendment gives state pretrial detainees—just as the Fifth Amendment gives federal pretrial detainees—rights which are "*at least as great* as the Eighth Amendment protections available to a convicted prisoner." *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (emphasis in original; quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). The Constitution affords greater protection to a pretrial detainee compared to a convicted inmate in the sense that "[d]ue process requires that a pretrial detainee not be punished." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979)). In other words, the Constitution shields pretrial detainees not just from "cruel and unusual punishments," U.S. Const. amend. VIII, but from *any* punishment whatsoever. *Id.*; see *Revere,* 463 U.S. at 244; *Bell*, 441 U.S. at 535 n. 16.

Excessive force claims of pretrial detainees are analyzed under an objective reasonableness standard. *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017). A court must assess the actions of each officer "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)). A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail

officials "are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (quoting *Bell*, 441 U.S. at 520). Factors relevant to assessing the objective reasonableness of force used by officers include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* (quoting *Kingsley*, 135 S.Ct. at 2473).

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

Whether measured against the subjective standard of the Eighth Amendment or the objective standard of the Fourteenth Amendment, the allegations of Jaso's Amended Complaint are sufficient to state a claim against Schlemat and Area for the use of excessive force. Jaso claims he was assaulted for no reason, beaten severely, and seriously injured. He also alleges that Schlemat later threatened him with more violence.

Jaso "believes that [Castellano and unknown, unnamed Defendants] also kicked and struck him while he was down" (Filing 16, ¶ 10), but he has alleged no facts to support this belief. To avoid dismissal, a complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *Williams v. Hobbs,* 658 F.3d 842, 848 (8th Cir. 2011) (quoting *Parhurst v. Tabor,* 569 F.3d 861, 865 (8th Cir.2009)); *see Infante v. City of Hastings*., No. 4:15CV3047, 2015 WL 5167267, at *2 (D. Neb. Sept. 3, 2015) (dismissing section 1983 claims because plaintiff's "allegations fail to provide grounds for relief, beyond mere speculation."), *aff'd*, 668 F. App'x 687 (8th Cir. 2016).

6

Dawson County may not be held responsible for Schlemat's and Area's alleged constitutional violations under a theory of *respondeat superior* or vicarious liability. "It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the [County] may be held liable under § 1983." *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (quoting *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987) (O'Connor, J., dissenting)).

"[A] plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation." *Id.* (quoting *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016). The pattern of unconstitutional conduct must be so pervasive and widespread so "as to have the effect and force of law." *Id.* (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996)).

Here, Jaso alleges that "Schlemat and Area have repeatedly engaged in excessive force against inmates in the past." (Filing 1, ¶ 13.) He also alleges that "[t]he failure of Dawson [County] Sheriff's office to take disciplinary or other action to curb the known pattern of physical abuse of inmates by defendants Schlemat, Area, Castellano and all unnamed defendants constituted deliberate indifference to the Plaintiff and other prisoners safety and contributed to and proximately caused the above-described violation of Eighth Amendment rights and assault and battery." (*Ibid.*, ¶ 32.)

Because Jaso has not identified a policymaking official for the Sheriff's office who knew of Schlemat's and Area's alleged use of excessive force in the past, or provided any facts as to how such a policymaker gained that knowledge, he has failed to allege sufficiently the existence of an unofficial custom. *See, e.g., Mann v. City of Lincoln*, No. 8:08CV431, 2008 WL 5423885, at *2 (D. Neb. Dec. 30, 2008) (Plaintiff's allegations that police officers routinely used excessive force during arrests, that such practice was the moving force behind his injury, and that the municipality's policy-making officials received notice of the misconduct but were

7

deliberately indifferent, failed to state a plausible claim for relief because "Plaintiff failed to explain how the municipality's policy making officials received notice of the alleged misconduct."). Thus, on the facts alleged in the Amended Complaint, Dawson County cannot be held liable under § 1983 for Plaintiff's injuries

### 2. Failure to Protect

An "officer may be liable if he does not intervene to prevent the use of excessive force when '(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.'" *Robinson v. Payton*, 791 F.3d 824, 829 (8th Cir. 2015) (quoting *Nance v. Sammis,* 586 F.3d 604, 612 (8th Cir. 2009)).

Here, Jaso alleges: (1) "On May 13th Officer Castellano, stood their [*sic*] and watch and failed to protect me from this assault by the other two officers he had a duty to protect me under the Eighth amendment." (Filing 1, ¶ 9.) (2) "Defendant Castellano and Unnamed defendants did not intervene to prevent the assault, and the Plaintiff believes that these defendants also kicked and struck him while he was down." (*Ibid.*, ¶ 10.) (3) "During these events defendant Castellano remained outside Plaintiff's cell and did not intervene, and failed to protect him from the assault." (*Ibid.*, ¶ 23.) (4) "The actions of defendants Schlemat, Area, Castellano and all unnamed defendants in using physical force against the Plaintiff without need or provocation, or failing to intervene to prevent the misuse of force, were done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution." (*Ibid.*, ¶ 30.)

Liberally construing the Amended Complaint, and, in particular, reading the allegation in paragraph 9 to mean that Castellano "stood there and watched" while Jaso was being assaulted by Schlemat and Area, a plausible failure-to-protect claim has been stated against Castellano in his individual capacity. *See, e.g., Polak v. City of Omaha*, No. 8:18CV358, 2019 WL 1331912, at *7 (D. Neb. Mar. 25, 2019) ("Polak alleges that he was beaten by Defendants Iselin, Laney, Gormley and Does 1-100. Thus, they were necessarily present at the time of the alleged violation of Polak's Fourth Amendment rights. Polak also alleges that they deliberately *failed* to act to prevent the violation. Nothing about the facts presented in the Complaint would lead to any conclusion other than the Officers knew Polak's rights were being

violated and had the opportunity and means to prevent the harm.") (emphasis in original); *O'Keefe v. Beatrice Police Dep't*, No. 8:16CV29, 2016 WL 2757695, at *4 (D. Neb. May 11, 2016) ("Plaintiff specifically alleges that defendants ... were witnesses to [officers'] use of force and 'did nothing to intervene.' This is sufficient to allege a failure-to-protect claim").

However, insufficient facts are alleged to state a plausible claim against Castellano in his official capacity. There are no facts alleged from which it might reasonably be concluded that there was a policy or custom of not protecting inmates from assaults or the use of excessive force at the Dawson County jail.

### 3. Denial of Medical Care

Deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983 for violation of the Eighth Amendment. *Morris v. Cradduck*, No. 17-3079, __ F.3d __, 2020 WL 1501960, at *2 (8th Cir. Mar. 30, 2020) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). A pretrial detainee has the same right under the Fourteenth Amendment's Due Process Clause. *Id.* (citing *Barton v. Taber*, 908 F.3d 1119, 1123-24 (8th Cir. 2018)). To establish a constitutional violation, a prisoner or detainee must demonstrate an objectively serious medical need that the defendant knew about and deliberately disregarded. *Id.* (citing *Barton* at 1124).

An objectively serious medical need is one "diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *McGrone v. Boyd*, No. 8:18CV233, 2019 WL 2583841, at *4 (D. Neb. June 24, 2019) (quoting *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008)). Deliberate disregard requires "more than negligence, more even than gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Id.* (quoting *Thompson v. King*, 730 F.3d 742, 747 (8th Cir. 2013)). Thus, to be liable for deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Here, Jaso alleges: (1) "Only after Plaintiff's sister Ida Siers called the sheriff department and filed formal charges did he get medical treatment at the local hospital for his shoulder and facial injuries." (Filing 16, ¶ 14.) (2) "Plaintiff was placed in

9

holding cell for 96 hours after being seriously assaulted by the defendants before being taking to the hospital." (*Ibid.*, ¶ 24.) (3) "Plaintiff was not taken to the hospital until after his sister filed a formal complaint against the Dawson [County] Sheriff department." (*Ibid.*, ¶ 25.) (4) "The Plaintiff was taken to the Hospital 96 hours after the assault where his shoulder was seriously injuried [*sic*], had a split nose, cracked tooth, lacerations to his face and scalp, numereous [*sic*] bruises and abrasions to his arms, legs, torse [*sic*], face and head from the assault from the defendants." (*Ibid.*, ¶ 26.) (5) "Plaintiff was denied medical treatment for 96 hours before the staff at Dawson Sheriff department actual [*sic*] took him to the hospital, there is records to support these facts[.]" (*Ibid.*, ¶ 27.) (6) "The failure of all defendants to take Plaintiff to the hospital for 96 hours constitutes violation of the Eighth Amendment, and cruel and unusual punishment and constitutes diliberate [*sic*] indifference because all defendants was aware of the injuries that Plaintiff had and did nothing for 96 hours." (*Ibid.*, ¶ 33.)

Liberally construing the Amended Complaint, these allegations are sufficient to state a plausible claim for relief against Schlemat, Area, and Castellano in their individual capacities. *See, e.g., Stewart v. Douglas Cty. Corr. Ctr.*, No. 8:08CV93, 2008 WL 4933975, at *3 (D. Neb. Nov. 14, 2008) ("[T]he plaintiff's amended complaint against Dutcher and Stevens, in their individual capacities, sufficiently alleges claims that these defendants violated plaintiff's Eighth Amendment rights by using excessive force and denying plaintiff access to medical care."); *Williams v. Hagen*, No. 8:04CV451, 2005 WL 1204324, at *1 (D. Neb. May 11, 2005) (denying motion to dismiss § 1983 claim brought by jail inmate against officers who allegedly assaulted plaintiff, refused to obtain medical care for him, and wrongfully placed him in administrative confinement). However, because Plaintiff does not allege that the delay in his receiving medical treatment was attributable to a municipal policy or custom, the official-capacity claims against these defendants must be dismissed.

### 4. Summary

Jaso's Eighth or Fourteenth Amendment claims will be allowed to proceed to service (1) against Schlemat and Area, in their individual capacities only, for use of excessive force; (2) against Castellano, in his individual capacity only, for failing to protect Jaso from Schlemat's and Area's alleged use of excessive force; and (3) against all three named Defendants, in their individual capacities only, for deliberate

10

disregard of Jaso's alleged medical needs.[3] All § 1983 official-capacity claims will be dismissed without prejudice.

## B. State Law Claims

Once the court has established original jurisdiction over some claims, it may exercise supplemental jurisdiction over specified additional state law claims which it would otherwise have no independent basis for jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349-50 (1988); *see* 28 U.S.C. § 1367(a) (providing that the district courts shall have supplemental jurisdiction over related state law claims that form part of the same case or controversy as the original jurisdiction). "Supplemental jurisdiction covers those claims 'so related' to federal claims that they are 'part of the same case or controversy under Article III,' 28 U.S.C. § 1367(a), in that they 'derive from a common nucleus of operative fact.'" *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1753 (2019) (quoting *Mine Workers v. Gibbs*, 383 U. S. 715, 725 (1966)). "A plaintiff's claims derive from a common nucleus of operative fact if the 'claims are such that he would ordinarily be expected to try them all in one judicial proceeding.'" *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 963 (8th Cir. 2011) (quoting *Gibbs,* 383 U.S. at 725).

In this case, Jaso states in the "Introduction" to the Amended Complaint that in addition to his § 1983 claims for "excessive use of force, denial of medical care and failure to protect in violation of the Eighth Amendment," he "alleges the torts of assault and battery and negligence." (Filing 16, p. 1.) Jaso alleges as a conclusion of law that "[t]he actions of defendants Schlemat, Area, Castellano and all unnamed defendants in using physical force against the plaintiff without need or provocation

---

[3] Under the Prison Litigation Reform Act (PLRA), an inmate must exhaust all available administrative remedies before bringing a § 1983 suit. *See* 42 U.S.C. § 1997e(a); *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015). Jaso generally alleges that he "has exhausted his administrative remedies with respect to all claims and the defendant." (Filing 16, ¶ 28.) Because the PLRA's exhaustion requirement is not jurisdictional—and thus can be waived if not raised as an affirmative defense—Jaso is not required to plead compliance with § 1997e(a) or to allege any supporting facts. *See Keup v. Hopkins*, 596 F.3d 899, 904 (8th Cir. 2010) (holding that prison officials waived exhaustion defenses by failing to assert them at trial).

constituted the tort of assault and battery under the law of Nebraska" (*Ibid*., ¶ 31), but a negligence claim is not clearly identified. Presumably, however, the following allegations of "deliberate indifference" in the "Claims for Releief" [sic] section of the Amended Complaint are intended to encompass common law tort claims as well as constitutional tort claims:

> 32. The failure of Dawson Sheriff's office to take disciplinary or other action to curb the known pattern of physical abuse of inmates by defendants Schlemat, Area, Castellano and all unnamed defendants constituted deliberate indifference to the Plaintiff and other prisoners safety and contributed to and proximately caused the above-described violation of Eighth Amendment rights and assault and battery[.]

> 33. The failure of all defendants to take Plaintiff to the hospital for 96 hours constitutes violation of the Eighth Amendment, and cruel and unusual punishment and constitutes diliberate [sic] indifference because all defendants was aware of the injuries that Plaintiff had and did nothing for 96 hours.

(Filing 16, p. 5.)

In other words, Jaso appears to be claiming that (1) all Defendants committed assault and battery, which are intentional torts,[4] (2) "Dawson [County] Sheriff's office" was deliberately indifferent (or at least negligent)[5] in failing to prevent the

---

[4] "Battery and assault are separate torts resulting from a defendant's intentional actions directed toward another.... A battery requires 'an actual infliction' of an unconsented injury upon or unconsented contact with another.... In contrast, [the Nebraska Supreme Court has] characterized the intentional tort of assault as a 'wrongful offer or attempt with force or threats, made in a menacing manner, with intent to inflict bodily injury upon another with present apparent ability to give effect to the attempt,' without requiring that the one assaulted be subjected to any actual physical injury or contact." *Reavis v. Slominski*, 551 N.W.2d 528, 536 (Neb. 1996) (quoting *Bergman v. Anderson,* 411 N.W.2d 336, 339 (Neb. 1987) (internal quotations and citation omitted)).

[5] Deliberate indifference is equivalent to criminal-law recklessness, which is "more blameworthy than negligence," yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate.

12

alleged assault and battery, and (3) all Defendants were deliberately indifferent (or at least negligent) in failing to take Jaso to the hospital after the alleged assault and battery. These claims are closely related to Jaso's § 1983 claims, and can be entertained by the court under its supplemental jurisdiction.

The Nebraska Political Subdivisions Tort Claims Act (PSTCA), Neb. Rev. Stat. § 13-901 *et seq.*, "is the exclusive means by which a tort claim may be maintained against a political subdivision or its employees." *Smith v. Iverson*, No. 8:19CV298, 2019 WL 4417548, at *17 (D. Neb. Sept. 16, 2019) (quoting *Geddes v. York County*, 729 N.W.2d 661, 665 (Neb. 2007)). "Where a claim against an employee of a political subdivision is based upon acts or omissions occurring within the scope of employment, it is governed by the provisions of the PSTCA." *McKenna v. Julian*, 763 N.W.2d 384, 390 (Neb. 2000) (affirming dismissal of claims brought against individual police officer for assault, battery, and false arrest, based on sovereign immunity), *abrogated on other grounds by Doe v. Bd. of Regents of Univ. of Neb.*, 788 N.W.2d 264 (Neb. 2010)); *see* Neb. Rev. Stat. § 13-902 ("[N]o suit shall be maintained against such political subdivision or its officers, agents, or employees on any tort claim except to the extent, and only to the extent, provided by the [PSTCA].").[6]

1. Scope of Employment

"Claims against a political subdivision employee for acts and omissions performed in the course and scope of employment are deemed actions against the county and not the employee personally." *Foell v. Cty. of Lincoln*, No. 4:17CV3044, 2019 WL 2996276, at *14 (D. Neb. July 9, 2019) (citing *Cappel v. State*, 298 Neb.

─────────────────

*Schaub v. VonWald*, 638 F.3d 905, 914-15 (8th Cir. 2011) (citing *Farmer v. Brennan,* 511 U.S. 825, 839-40 (1994)).

[6] The PSTCA "eliminates, in part, the traditional immunity of political subdivisions for the negligent acts of their employees." *Duggin v. City of Omaha*, No. 8:19CV453, 2020 WL 406361, at *2 (D. Neb. Jan. 24, 2020) (quoting *Doe v. Omaha Pub. Sch. Dist.*, 727 N.W.2d 447, 453 (Neb. 2007). The PTSCA does *not* waive immunity for any claim "arising out of assault, battery," and certain other intentional torts. Neb. Rev. Stat. § 13-910(7).

445, 452 (2018)). "The requirements of the Political Subdivisions Tort Claims Act apply where an individual is sued in his or her individual capacity, but is performing within the scope of employment." *Cole v. Wilson*, 627 N.W.2d 140, 144 (Neb. App. 2001) (citing *Bohl v. Buffalo Cty.,* 557 N.W.2d 668 (Neb. 1997); *Kuchar v. Krings,* 540 N.W.2d 582 (Neb. 1995).

"Because [Jaso] has named the officers as Defendants both individually and in their official capacities, this Court 'must determine whether the action against the individual official[s] is in reality an action against the [County]...." *McKenney v. Harrison*, No. 8:09CV129, 2009 WL 1606458, at *2 (D. Neb. June 3, 2009) (quoting *McKenna,* 763 N.W.2d at 388, and finding "[i]t is apparent from the allegations in McKenney's complaint that the alleged actions of the officers [in deploying a Taser electroshock weapon] arose within the scope of their employment with the Omaha Police Department, and that McKenney's state-law claims against the officers are claims against them in their official capacities only."); *see Polak*, 2019 WL 1331912, at *7 ("It is apparent from the allegations in Polak's Complaint that the alleged actions of the Officers [in intentionally beating him during an arrest] arose within the scope of their employment, and that Polak's state-law claims against the Officers are claims against them in their official capacities only."); *see also Williams v. Raynor Rensch & Pfieffer*, No. 8:11-CV-446, 2015 WL 2127095, at *23 (D. Neb. May 6, 2015) ("Williams has not alleged any facts to suggest that [defendants] were acting outside their employment for Douglas County and their respective police forces. Thus, the PSTCA applies to his claims against those defendants in their individual and official capacities."), *aff'd sub nom., Williams v. Raynor*, 669 F. App'x 340 (8th Cir. 2016); *Brizendine v. City of Omaha*, No. 8:07CV277, 2009 WL 3271334, at *3 (D. Neb. Oct. 9, 2009) ("Because it is apparent from the record that the actions of defendant Platt which form the basis of plaintiff's request for money damages [based on claims of assault, battery, false arrest, false imprisonment, abuse of process, negligence, and gross negligence] arose within the scope of Platt's employment as an Omaha police officer, the requirements of the PSTCA apply, and the defendants are entitled to summary judgment on plaintiff's state law claims.").

Jaso does not specifically allege whether Defendants were acting within the course and scope of their employment when they caused him injury. It is only alleged

14

that Defendants were employed by the Dawson County Sheriff's Department, and that their alleged acts and omissions occurred at the county jail.

"In determining whether conduct falls within an employee's scope of employment, the Nebraska Supreme Court has used the Restatement (Second) of Agency (1958) for guidance." *Pearce v. Werner Enters., Inc.*, 116 F. Supp. 3d 948, 953 (D. Neb. 2015). It provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
> (a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and space limits;
>
> (c) it is actuated, at least in part, by a purpose to serve the master, and
>
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Rest. 2d Agency § 228 (1958); *see Schicker v. Klenda*, No. 8:20-CV-02, 2020 WL 1043669, at *4 (D. Neb. Mar. 4, 2020); *Peterson v Ruiz*, No. CI16-0000976, 2017 WL 9285279, at *1 (D. Neb. May 12, 2017) ("When a pleading asserts work-related events or conduct by an employee, generally only outrageous criminal conduct by that employee would fall outside the realm of that employee's 'course and scope of employment.'") (citing *Bates v. United States*, 517 F.Supp.1350 (W.D. Mo. 1981)).

The scope-of-employment doctrine "is phrased in more general terms" in the current version of the Restatement, which provides, in relevant part:

> (1) An employer is subject to vicarious liability for a tort committed by its employee acting within the scope of employment.
>
> (2) An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of

15

conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.

Rest. 3d  Agency § 7.07 & comment b (2006).

"Under § 228(2) [of the Restatement (Second) of Agency], conduct is not within the scope of employment if it is 'too little actuated by a purpose to serve' the employer.… In contrast, under subsection (2) of [§ 7.07 of the Restatement (Third) of Agency], an employee's conduct is outside the scope of employment when it occurs within an independent course of conduct intended to serve no purpose of the employer. Most cases apply the standard stated by this section." *Id.*, comment b. The Nebraska Supreme Court has not yet adopted this formulation of the rule, although it "has, in the past, sought guidance from and approved several other sections of the Restatement (Third) of Agency." *Pearce*, 116 F. Supp. 3d at 957.[7]

The court has no difficulty in concluding that Defendants' alleged failure to protect Jaso from assault and battery at the jail, and their alleged failure to provide Jaso with medical care following the assault and battery, must have occurred within the course and scope of their employment in order to be actionable. "A negligence action brought under the PSTCA has the same elements as a negligence action brought against a private individual—a plaintiff must show a legal duty owed by the

---

[7] In *Pearce*, consistent with the rule stated in Restatement (Third) of Agency § 7.07, Judge Gerrard predicted the Nebraska Supreme Court would not adopt an "aided-by-agency" theory based on Restatement (Second) of Agency § 219(2)(d), which, "has proven contentious and difficult to apply, and has been disavowed by its creators." 116 F. Supp. 3d at 955-57 (holding that supervisor's alleged intentional torts of battery, assault, and intentional infliction of emotional distress against employee were not committed within scope of employment, and thus supervisor's employer was not vicariously liable, where while off duty, supervisor allegedly sexually assaulted and threatened employee); *see also Carnrick v. Riekes Container Corp.*, No. 8:16CV95, 2017 WL 1476229, at *6 (D. Neb. Feb. 7, 2017) (dismissing intentional tort claim brought against employer as involving sexually harassing behavior that was outside of supervisor's scope of employment).

16

defendant to the plaintiff, a breach of such duty, causation, and damages." *Trejo v. City of Omaha*, No. 8:19CV182, 2020 WL 434563, at *4 (D. Neb. Jan. 28, 2020) (quoting *Reiber v. Cty. of Gage*, 928 N.W.2d 916, 925 (Neb. 2019)).[8] Under Nebraska law, it is only because of Defendants' employment by the Dawson County Sheriff's Department that they may have owed a duty to Jaso to protect him from assault and battery by others or to provide him with medical care while he was in custody.

The Nebraska Supreme Court has adopted the duty analysis contained in the Restatement (Third) of Torts, § 7 (2012). *See A.W. v. Lancaster Cty. Sch. Dist. 0001*, 784 N.W.2d 907, 918 (Neb. 2010). This rule of law "does not recognize a universal duty to exercise reasonable care to all others in all circumstances. Rather, it imposes a general duty of reasonable care only on an actor whose conduct has created a risk of physical harm to another, and it recognizes that absent such conduct, an actor ordinarily has no duty of care to another." *Bell v. Grow With Me Childcare & Preschool LLC*, 907 N.W.2d 705, 718 (Neb. 2018). Section 37 of the Restatement states the obverse of this rule: "An actor whose conduct has not created a risk of physical or emotional harm to another has no duty of care to the other unless a court determines that one of the affirmative duties provided in §§ 38-44 is applicable." Rest. 3d Torts § 37 (2012). One of these affirmative duties is that "[a]n actor in a special relationship with another owes the other a duty of reasonable care with regard to risks that arise within the scope of the relationship." *Ibid.*, § 40(a). One such special relationship giving rise to the duty of reasonable care is that of "a custodian with those in its custody, if: (a) the custodian is required by law to take custody or voluntarily takes custody of the other; and (b) the custodian has a superior ability to protect the other." *Ibid.*, § 40(b)(7). "The custodial relationships that courts have recognized as imposing an affirmative duty include … the classic jailer-inmate relationship." *Ibid.*, § 40 comment n.

---

[8] "While the existence of a duty and the identification of the applicable standard of care are questions of law, the ultimate determination of whether a party deviated from the standard of care and was therefore negligent is a question of fact." *Trejo*, 2020 WL 434563, at *4 (quoting *Reiber* 928 N.W.2d at 925).

17

Because there is no general duty of reasonable care, any claim that Defendants were negligent in failing to protect Jaso from harm, or in failing to obtain medical treatment for him, is clearly governed by the PSTCA. This means that Defendants cannot be sued in their individual capacities for these alleged failures to act.

Deciding whether Defendants might be held personally liable for the alleged assault and battery requires a more fact-intensive inquiry. For example, in *St. John v. United States*, 240 F.3d 671 (8th Cir. 2001), the Eighth Circuit remanded a case for further findings of fact after the district court dismissed a sexual assault claim for lack of jurisdiction under the Federal Tort Claims Act (FTCA) 28 U.S.C. § 2671 *et seq*. The claim was brought against the United States by the former wife of a Bureau of Indian Affairs (BIA) police officer, who allegedly was raped by the officer after being threatened with arrest.[9] The Eighth Circuit concluded that the district court had failed to complete the scope-of-employment analysis that is required by the Act. The Court of Appeals explained:

> The applicable law in this case is the law of South Dakota. *See Brown* [*v. Armstrong,* 949 F.2d 1007, 1012 n. 7 (8th Cir.1991)] ("[u]nder the FTCA, the law of the place of the alleged tort governs the scope-of-employment question"). Under South Dakota law, the scope of employment inquiry is based upon a foreseeability test that evaluates whether a sufficient nexus exists "between the agent's employment and the activity which actually caused the injury." *Leafgreen v. American Family Mutual Insurance Co.,* 393 N.W.2d 275, 280 (S.D. 1986) (*Leafgreen*). In addition, South Dakota has adopted the Restatement (Second) of Agency (1958), including § 229, which focuses on the relationship of the employee's conduct to the employer's business…. Generally, the "act of an employee done to effect some independent purpose of his own is not within the scope of his employment." *United*

---

[9] "In 1974, Congress carved out an exception to [the FTCA's] preservation of the United States' sovereign immunity for intentional torts by adding a proviso covering claims that arise out of the wrongful conduct of law enforcement officers. Known as the 'law enforcement proviso,' this provision extends the waiver of sovereign immunity to claims for six intentional torts, including assault and battery ….'" *Millbrook v. United States*, 569 U.S. 50, 52-53 (2013) (citations omitted). Nebraska's PSTCA does not contain a similar waiver of sovereign immunity.

*States v. Lushbough,* 200 F.2d 717, 720 (8th Cir.1952). Nor is conduct that is "so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business" considered within the scope of employment. *Id.* at 280-81.

This court has applied the South Dakota foreseeability test in *Red Elk v. United States,* 62 F.3d 1102 (8th Cir.1995) (*Red Elk*) (citing *Leafgreen* ), and in [*Primeaux v. United States,* 181 F.3d 876 (8th Cir. 1999) (en banc) (*Primeaux II* )]. In *Red Elk,* an armed, uniformed Tribal police officer in a patrol car, accompanied by another officer, stopped to pick up a thirteen-year-old girl walking alone at night for curfew violation and then raped her in the back seat of the car. Applying the *Leafgreen* test, this court found that the officer's conduct was foreseeable because there was an obvious nexus between the officer's conduct and his employment. *Red Elk,* 62 F.3d at 1106.…

In *Primeaux II,* a Tribal officer returning from a work-related seminar, driving a recognizable police vehicle, stopped to offer a ride to a young woman whose car was stuck in a snowbank and then raped the woman. We found that, although "it is sufficiently foreseeable to a government employer that on-duty police officers will occasionally misuse their authority to sexually assault detainees," the officer's conduct in that case was not foreseeable because the officer was acting in the capacity of an individual citizen, not a police officer. *Primeaux II,* 181 F.3d at 882. As a result, we held that his conduct was too remote and tenuous to be foreseeable to his employer, therefore falling outside the scope of his employment.

* * *

The district court neglected to find whether Coleman did in fact threaten St. John with re-arrest to compel her to enter his truck. Without knowing whether Coleman threatened St. John with arrest, it is impossible to determine whether he was acting within the scope of his employment. Under *Primeaux II,* we must focus on whether the conduct "is based upon the employment relationship." 181 F.3d at 881. Coleman's misconduct may have been related to his employment if Coleman did force St. John to enter his truck under threat of arrest. The existence of Coleman's threats would weigh heavily in a *Leafgreen* evaluation of whether a sufficient nexus existed between Coleman's employment and the activity that caused the injury. Because the duty to

19

> arrest is a police officer's normal employment responsibility, the activity causing the injury would be related to Coleman's employment as a BIA police officer. Only a police officer would have the ability to utilize the threat of arrest to coerce a civilian into unwillingly accompanying him. Unlike the officer in *Primeaux II,* Coleman could not have been acting within an individual civilian capacity by making such a threat. No ordinary citizen possesses the ability to carry out a threat to arrest. On the contrary, the effectiveness of Coleman's threat to arrest St. John depended entirely upon his ability to fulfill it—an ability within the foreseeable scope of his employment.

*St. John*, 240 F.3d at 676-78.

In the present case, it cannot be determined from the face of the Amended Complaint whether any assault or battery alleged was "actuated, at least in part, by a purpose to serve [Dawson County]," and, if so, whether "the use of force [was] not unexpectable by [Dawson County]." Rest. 2d Agency § 228(1)(c)&(d). Neither is it possible to determine whether an assault or battery "occur[ed] within an independent course of conduct not intended by [a Defendant] to serve any purpose of [Dawson County]." Rest. 3d Agency § 7.07(2). *But cf. Beverly ex rel. Beverly v. Casey,* No. 8:05CV393, 2006 WL 298810, at *3 & n. 5 (D. Neb. Feb.6, 2006) ("The claims against the individual [police officers] in their individual capacities, arising out of alleged assault and battery, are not subject to the provisions of the Nebraska Political Subdivisions Tort Claims Act, nor are they barred by sovereign immunity."); *Thompson v. Kyle*, No. 8:05CV136, 2006 WL 267171, at *3 (D. Neb. Feb. 1, 2006) ("Billy Thompson's claims against the individual [police officers] in their individual capacities based on assault and [false arrest] are not governed by the Nebraska Political Subdivisions Tort Claims Act, ...."); *Jerdan v. Bruns*, No. 4:12CV3168, 2013 WL 5366988, at *2 (D. Neb. Sept. 23, 2013) ("Assault and battery, by their very nature, are the sort of claims that, if proven, would occur outside the scope of public employment.").

Consequently, Jaso's claims for assault and battery alleged against Schlemat and Area, in their individual capacities, will be allowed to proceed to service. But, as previously discussed with reference to Jaso's excessive force claims, there are no facts alleged in the Amended Complaint to state a plausible claim for relief against

Castellano. Jaso's unsupported belief that Castellano may have kicked and struck him while he was down is not sufficient.

### 2. Claim-Filing Requirement

The PSTCA requires a claimant to file a tort claim with the governing body of the political subdivision before bringing suit. *See Geddes*, 273 Neb. at 275; Neb. Rev. Stat. § 13-905 ("All tort claims under the Political Subdivisions Tort Claims Act … shall be filed with the clerk, secretary, or other official whose duty it is to maintain the official records of the political subdivision, …."); Neb. Rev. Stat. § 13-906 ("No suit shall be permitted under the Political Subdivisions Tort Claims … unless the governing body of the political subdivision has made final disposition of the claim, …."). Failure to present a claim in compliance with the PSTCA warrants dismissal, but such noncompliance must be raised as an affirmative defense. *Smith*, 2019 WL 4417548, at *17 (citing *Keller v. Tavarone*, 628 N.W.2d 222, 232-33 (Neb. 2001); *Wise v. Omaha Pub. Sch.*, 714 N.W.2d 19, 22 (Neb. 2006)).

Here, Jaso specifically alleges that he "filed tort claim which was denied" (Filing 16, ¶ 29), and he has attached copies of supporting documents as exhibits to the Amended Complaint.[10] Those exhibits, however, do not prove that Jaso filed a claim with Dawson County in the manner required by Neb. Rev. Stat. § 13-905. Rather, they show that Jaso mistakenly filed a claim with the State of Nebraska under the State Torts Claim Act, Neb. Rev. Stat. § 81-8,209 *et seq.*, which was returned to him on August 2, 2019, with the explanation that "the Nebraska State Claims Board does not have jurisdiction over the Dawson County Jail." (Filing 16, pp. 8-9.)

The tort claim Jaso filed with the State is a nullity, and cannot be used by him to pursue a claim against Dawson County. *See Estate of McElwee v. Omaha Transit Auth.*, 664 N.W.2d 461, 467 (Neb. 2003) ("[C]ourts applying Nebraska law have consistently rejected arguments that the notice requirement of the [PSTCA] can be satisfied by claims presented to persons other than those specifically designated by § 13-905."); *Rinehart v. Cty. of Franklin*, No. 4:14CV3086, 2015 WL 1470411, at

---

[10] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

*7 (D. Neb. Mar. 31, 2015) ("[D]efendants' actual notice is not sufficient if the plaintiff failed to comply with the PSTCA.").

Because Jaso's own pleadings show that he failed to comply with § 13-905, Defendants would be able to assert the defense of lack of notice in a Rule 12(b)(b) motion to dismiss for failure to state a claim upon which relief can be granted. *Cf. Anderson v. Nebraska*, No. 4:17-CV-3073, 2018 WL 4599832, at *5 (D. Neb. Sept. 25, 2018) ("[F]ailure to present a claim in compliance with the PSTCA … can only be asserted in a Rule 12(b)(6) motion when, on the face of the complaint, allegations are included which could be the subject of the affirmative defense.") (citing *Weeder v. Cent. Cmty. Coll.*, 691 N.W.2d 508, 515 (Neb. 2005)).

Correspondingly, the court on initial review has the authority to dismiss an in forma pauperis complaint as frivolous when it is apparent that the PSTCA's claim-filing requirement has not been met. *Cf. Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir. 1992) ("Although the statute of limitations is an affirmative defense, a district court may properly dismiss an in forma pauperis complaint under 28 U.S.C. § 1915(d) when it is apparent the statute of limitations has run."). "It is a general principle of federal civil procedure that courts can raise affirmative defenses *sua sponte* if it is so plain from the face of the complaint that the suit can be regarded as frivolous; and the district judge need not wait for an answer before dismissing the suit." *Muldrow v. United States*, No. 4:07-CV-00033GTE, 2007 WL 582184, at *2 (E.D. Ark. Feb. 20, 2007) (internal quotations and citation omitted). "The expensive machinery of the federal court should not be set into motion in the hope that the defendant will blunder and waive an obvious and dispositive defense." *Lloyd v. United States*, No. 99 C 3347, 1999 WL 759375, at *6 (N.D. Ill. Sept. 3, 1999) (dismissing complaint under § 1915(d) based on issue preclusion and limitations defenses).

Because Jaso's failed to comply with the PSTCA's claim-filing requirement, all official-capacity claims tort claims will be dismissed without prejudice, as frivolous. In addition, as will be discussed next, sovereign immunity has not been waived with respect to the claims alleged in Amended Complaint.

3. Intentional Torts Exception

In *Davis v. State*, 902 N.W.2d 165 (Neb. 2017), the Nebraska Supreme Court "overrule[d] Nebraska cases holding that an exception to the State's waiver of

immunity for tort claims under the [State Tort Claims Act (STCA)] is an affirmative defense that the State must plead and prove." *Id.* at 176. Because the exceptions are jurisdictional in nature, … a court can consider an STCA exception sua sponte …." *Id.* (holding on appeal that "intentional torts exception" applied to bar appellee's tort claim under the doctrine of sovereign immunity). The same is true of the intentional torts exception contained in the PSTCA, which mirrors the language of the STCA. *See Big Crow v. City of Rushville*, 669 N.W.2d 63, 67 (Neb. 2003) ("Generally, provisions in the Political Subdivisions Tort Claims Act should be construed in harmony with similar provisions in the State Tort Claims Act."); *see also Foell*, 2019 WL 2996276, at *15-16 (PSTCA's "discretionary function exception" not waived by county's failure to plead).

The PSTCA does not apply to "[a]ny claim arising out of assault, battery, false arrest, false imprisonment, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights, …." Neb. Rev. Stat. § 13-910(7). Thus, Schlemat and Area, in their official capacities, are immune from suit for assault and battery. *See, e.g., Willis v. City of Omaha*, No. 8:19CV211, 2019 WL 3777957, at *2 (D. Neb. Aug. 12, 2019) "[Plaintiff's] allegations referring to intentional assault and battery are clearly barred and are subject to the Nebraska Political Subdivisions Tort Claims Act as well as sovereign immunity."); *Polak*, 2019 WL 1331912, at *5 ("The Officers' alleged actions clearly constituted battery and, thus, Polak's tort claims constitute claims 'arising out of battery' for which sovereign immunity is not waived by the PSTCA."). What is more, no Defendant can be sued in his official capacity for any claim "arising out of" the alleged assault and battery.

Recently, in *Rutledge v. City of Kimball*, 935 N.W.2d 746 (Neb. 2019) the Nebraska Supreme reaffirmed that the PSTCA's "intentional torts exception" extends to negligence claims involving a political subdivision's alleged failure to protect a plaintiff from assault and battery. The plaintiff in *Rutledge* allegedly was attacked and choked by a city employee in a city building.  She brought a negligence claim against the city, alleging that the city had failed to supervise the employee and had failed to protect the plaintiff from assault and battery. The Nebraska Supreme Court held that the negligence claim was properly dismissed, stating:

In *Johnson v. State*, [700 N.W.2d 620 (Neb. 2005),] this court analyzed the intentional torts exception contained in the State Tort Claims Act, which contains language identical to the PSTCA. In that case, an inmate filed a negligence claim against the State of Nebraska, the Omaha Correctional Center, and the Nebraska Department of Correctional Services, alleging she was sexually assaulted by an employee of the Department of Correctional Services while the employee was acting within the scope of his employment.… The district court dismissed the plaintiff's petition after finding her claims were barred by the intentional torts exception because they arose out of an assault. This court affirmed the judgment of the district court. In doing so, we adopted Justice Kennedy's concurrence in the U.S. Supreme Court case *Sheridan v. United States*[, 487 U.S. 392 (1988)].

When addressing the intentional torts exception to the Federal Tort Claims Act, Justice Kennedy's concurrence recognized that an injury could arise from more than one cause and stated:

> "To determine whether a claim arises from an intentional assault or battery and is therefore barred by the exception, a court must ascertain whether the alleged negligence was the breach of a duty to select or supervise the employee-tortfeasor or the breach of some separate duty independent from the employment relation.... If the allegation is that the Government was negligent in the supervision or selection of the employee and that the intentional tort occurred as a result, the intentional tort exception ... bars the claim. Otherwise, litigants could avoid the substance of the exception because it is likely that many, if not all, intentional torts of Government employees plausibly could be ascribed to the negligence of the tortfeasor's supervisors. To allow such claims would frustrate the purposes of the exception."

To summarize, *Johnson* held that under the intentional torts exception, the State is immune from suit when the tort claim "is based on the mere fact of government employment (such as a respondeat superior claim) or on the employment relationship between the intentional tort-feasor and the government (such as a negligent supervision or negligent hiring claim)."

24

Similarly, in *Britton v. City of Crawford*, [803 N.W.2d 508, 516 (Neb. 2011),] this court held that when conduct "'aris[es] out of' a battery," it falls within the exception of § 13-910(7) and the political subdivision is not liable for damages resulting from the battery, even when the pleaded conduct is characterized or framed as negligence. In *Britton*, the personal representative of the estate of a deceased police shooting victim sued the City of Crawford under the PSTCA, alleging it was negligent in handling a standoff where the victim had barricaded himself. The City of Crawford filed a motion to dismiss the complaint on the grounds that it failed to state a cause of action upon which relief could be granted, and it argued the City of Crawford could not be held liable under the PSTCA, because the complaint alleged assault and battery. The district court granted the City of Crawford's motion to dismiss. This court affirmed and held the claim was barred by the intentional torts exception because the alleged negligence was "inextricably linked" to a battery. We reasoned that "[w]hile other factors may have contributed to the situation which resulted in [the victim's] death, but for the battery, there would have been no claim."

Here, Rutledge's claim clearly arises out of a battery. Rutledge alleges Ford attacked and strangled her, without her consent, intending to cause a harmful or offensive contact with her. She further alleges the City was negligent because it "knew or should have known that FORD had displayed past violent behavior and violent propensities, including prior assaults upon citizens[,] while on duty with [the] CITY" and "in failing to take proper measures to supervise FORD and protect the general public, specifically RUTLEDGE." ...

We hold that Rutledge's negligence claim is barred by the PSTCA because she cannot allege any potential source of duty other than Ford's employment status. In order to prevail in a negligence action, a plaintiff must establish the defendant's duty to protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused by the failure to discharge that duty. The threshold issue in any negligence action is whether the defendant owes a legal duty to the plaintiff. This court has held that there is no duty to control the conduct of a third person so as to prevent him or her from causing physical harm to another, unless "'a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct.'" When a special relationship exists,

25

an actor in that relationship "'owes a duty of reasonable care to third parties with regard to risks posed by the other that arise within the scope of the relationship.'" Here, there is no special relationship between Ford and the City—other than his employment relationship—that could give rise to an affirmative duty to protect Rutledge from Ford.

*Id.* at 749-52 (footnotes omitted).

This court reached the same result in *Deezia v. City of Lincoln*, 350 F. Supp. 3d 868 (D. Neb. 2018) (Kopf, J.), in which the plaintiff claimed he was injured while being arrested, and alleged that the City of Lincoln was negligent in failing to prevent the use of excessive force by police officers, in failing to properly screen job applicants, and in failing to properly train and supervise officers. In granting summary judgment in favor of the City, the undersigned judge stated:

> The Nebraska Supreme Court has repeatedly found that a plaintiff cannot avoid the intentional-torts exception by "'framing [his] complaint in terms of negligent failure to prevent the assault and battery.'" *Britton*, 803 N.W.2d at 517 (quoting *United States v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985)). The exception "'does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery. We read this provision to cover claims like [the plaintiff's] that sound in negligence but stem from a battery committed by a Government employee.' " *Id.* at 517 (emphasis in original) (quoting *Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38).
>
> * * *
>
> Here, although Plaintiff alleges that the City of Lincoln negligently trained, screened, hired, and supervised its police officers, the injuries for which Plaintiff sues "arose out of" the officers' intentional, physical contact with Plaintiff without his consent. This constitutes "arising out of ... battery" within the meaning of Neb. Rev. Stat. § 13-910(7). Although Plaintiff's claims are "grounded in negligence, ... the alleged negligence was inextricably linked to a battery, and ... this suit is thus barred by the Nebraska Political Subdivisions Tort Claims Act." *Westcott v. City of Omaha*, 901 F.2d 1486, 1490 (8th Cir. 1990) (in action against city for death of decedent, who was shot by police officer, district court correctly dismissed action

when facts alleged—although cast as a negligence claim—amounted to battery under Nebraska law, and NPSTCA allows municipalities to "plead the defense of sovereign immunity to avoid any state-law claims arising out of an assault or battery"); *see also Policky v. City of Seward, Neb.*, 433 F.Supp.2d 1013, 1027 (D. Neb. 2006) (city was immune from suit under NPSTCA when complaint alleged city was negligent in failing to properly train officer as to "the proper procedures when using a taser gun, restraining Plaintiff with unreasonable force, and ... how to determine what facts and circumstances merit the use of force" because city's alleged negligent failure to train was directly related to officer's employment as police officer and to his alleged intentional torts of unlawfully arresting and assaulting plaintiff); *Johnson v. State*, 270 Neb. 316, 700 N.W.2d 620 (2005) (intentional torts exception in State Tort Claims Act—which was identical to the NPSTCA exception in Neb. Rev. Stat. § 13-910(7)—encompassed negligence claim asserted against state for failure to supervise, hire, and discipline because such claim arose out of assault and battery by state correctional employee, and plaintiff simply reframed the claim); *Hawkins v. Gage Cty.*, No. 4:13CV3009, 2013 WL 12073803, at *19 (D. Neb. Sept. 3, 2013), *aff'd*, 759 F.3d 951 (8th Cir. 2014) ("The creative use of negligence pleading cannot resurrect a claim that is otherwise barred by the intentional tort exception of the Nebraska Political Subdivisions Tort Claims Act.").

*Id.* at 886-87. *See also McKenney*, 2010 WL 560891, at *8-10 (action of police officers using taser gun on plaintiff's decedent was battery, and "Plaintiff's claim against the City of Omaha, based on the theory of respondeat superior, and any claims she purports to have made against the City of Omaha for negligent failure to train, supervise, or promulgate policies, also must be dismissed."); *York v. Dunning*, No. 8:16-CV-175, 2016 WL 3983261, at *3 (D. Neb. July 25, 2016) ("York 'cannot avoid the reach of the intentional torts exception by framing [his] complaint in terms of negligent failure" to prevent an intentional tort.") (quoting *Britton*, 803 N.W.2d at 517); *Cambara v. Schlote*, No. 8:14-CV-260, 2015 WL 5775766, at *4 (D. Neb. Sept. 30, 2015) ("An action may 'arise out of' one of these enumerated intentional torts [for which immunity is not waived under § 13-910(7)] even if it is styled as a negligence action.").

In the present case, therefore, not only must Jaso's assault and battery claims against Defendants be dismissed, but also every claim that arises out of the alleged

assault and battery.[11] Jaso's claim that Defendants were negligent or otherwise at fault in failing to protect him from being assaulted and battered is obviously barred by the PSTCA's intentional torts exception. *See, e.g., Farrar v. Douglas Cty.*, No. 8:09CV63, 2010 WL 11693992, at \*3 (D. Neb. June 8, 2010) (dismissing tort claims brought by pretrial detainee who claimed corrections officer beat him up and other officers failed to intervene).

Whether Jaso's claim that Defendants' failed to take him to the hospital for 96 hours after he was injured is "inextricably linked" to the alleged assault and battery is less certain, but there is some authority for this proposition. For example, in *Johnson v. United States*, No. CIV. 06-1023, 2007 WL 2688556 (D.S.D. Sept. 11, 2007), *aff'd*, 534 F.3d 958 (8th Cir. 2008), the plaintiff alleged that he sustained a fractured clavicle, closed head injury, and multiple abrasions and cuts when he was beaten up by an off-duty BIA corrections officer who was trying to arrest the plaintiff for drunk driving, and that the officer delayed calling for an ambulance. The district court dismissed the case, finding, among things, that the FTCA's intentional torts exception applied to all claims. The district judge stated:

> "[A] cause of action which is distinct from one of those excepted under § 2680(h) will nevertheless be deemed to 'arise out of an excepted cause of action when the underlying governmental conduct which constitutes an excepted cause of action is 'essential' to plaintiff's claim." *Locke* [*v. United States*, 215 F.Supp.2d 1033, 1040 (D.S.D. 2002), *aff'd*, 63 F. App'x 971 (8th Cir. 2003)], *quoting Metz v. United States,* 788 F.2d 1528, 1534 (1986). *See also Williamson v. U.S. Dept. of Agriculture,* 815 F.2d 369, 377 (5th Cir. 1987), and *Thomas-Lazear v. F.B.I.,* 851 F.2d 1202, 1207 (9th Cir. 1988). Since Little Light's alleged assault of Johnson is essential to the claim for failure to secure timely medical care, the claim "arises out" of assault and is subject to the provisions of § 2680(h). Little Light is not an investigative or law enforcement officer [who would be covered by the 'law enforcement proviso]. Therefore, this court does not have jurisdiction over claims

_____

[11] "Whether the allegations made by a plaintiff present a claim that is precluded by exemptions set forth in the PSTCA is a question of law." *Rutledge*, 935 N.W.2d at 749.

arising out of his intentional torts and the plaintiff's claim for failure to secure timely care should be barred.

2007 WL 2688556, at *3. The Eighth Circuit affirmed the dismissal for lack of jurisdiction based on Johnson's failure to establish that Little Light was acting within the scope of his employment, and did "not address Johnson's additional contention that the district court wrongly concluded the intentional torts exception applied to certain of his claims." 534 F.3d at 964.

"It is well settled that statutes that purport to waive the protection of sovereign immunity of the State [of Nebraska] or its subdivisions are strictly construed in favor of the sovereign and against the waiver." *Stick v. City of Omaha*, 857 N.W.2d 561, 567 (Neb. 2015) (citing *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, 825 N.W.2d 204 (Neb. 2013)). "A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction." *Id.* (citing *Zawaideh*). The Nebraska Supreme Court "has specifically stated that [it] strictly construe[s] the PSTCA in favor of the political subdivision and against the waiver of sovereign immunity." *Id.* (citing *McKenna*, 763 N.W.2d at 384). "As a corollary to these propositions, in order to strictly construe against a waiver of sovereign immunity, [it] broadly read[s] exemptions from a waiver of sovereign immunity. *Id.*

Applying these rules of construction, any uncertainty as to whether the intentional torts exception applies to Jaso's claim that Defendants delayed providing him with medical care will be resolved in favor of Dawson County. That is to say, this claim "stem[s] from a battery committed by a Government employee." *Britton*, 803 N.W.2d at 517.

In any event, Jaso does not allege that the delay in treatment exacerbated his injuries. "In order to state a claim for negligence under Nebraska law, a plaintiff must plead the elements of duty, breach, causation, and damages." *Vallejo v. Amgen, Inc.*, No. 8:14CV50, 2014 WL 4922901, at *9 (D. Neb. Sept. 29, 2014); *see Gallion v. Woytassek*, 504 N.W.2d 76, 82 (Neb. 1993) ("The longstanding rule is that to state a cause of action for negligence, one must plead facts from which it can be inferred that the defendant owed a legal duty to protect the plaintiff from injury, that the defendant failed to discharge that duty, and that damage proximately resulted from

that failure."). At most, Jaso has pleaded facts from which it may reasonably be inferred that Defendants had a duty to provide him with necessary medical care, and that they breached that duty by not taking any action for 96 hours after he was injured. There are no facts alleged from which it may reasonably be inferred that Jaso sustained any further injury by reason of the delay.

4. Summary

Jaso has alleged sufficient facts to state a claim upon which relief may be granted against Schlemat and Area, in their individual capacities only, for assault and battery, but he has not alleged sufficient facts to state a claim upon which relief may be granted against Castellano in his individual capacity. Other state-law claims alleged in the Amended Complaint can only be brought against Defendants in their official capacities because they occurred within the scope of their employment.

However, the state-law tort claims alleged against Defendants in their official capacities are frivolous, because Jaso failed to file a claim in compliance with the requirements of the Political Subdivisions Tort Claims Act. In addition, the PSTCA does not waive sovereign immunity with respect to any of the claims alleged in the Amended Complaint. Jaso has failed to allege sufficient facts to state a claim upon which relief may be granted regarding the alleged delay in receiving medical care. All official-capacity claims alleged under Nebraska law will therefore be dismissed without prejudice.

IV. MOTION FOR APPOINTMENT OF COUNSEL

Jaso has filed a motion requesting appointment of counsel (Filing 17). The court cannot routinely appoint counsel in civil cases. In *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996), the Eighth Circuit Court of Appeals explained that "[i]ndigent civil litigants do not have a constitutional or statutory right to appointed counsel." Trial courts have "broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and the plaintiff's ability to investigate the facts and present his claim." *Id*. Having considered these factors, the request for the appointment of counsel will be denied without prejudice to reassertion.

## V. CONCLUSION

At this time, the court will not dismiss Jaso's § 1983 individual-capacity claims against (1) Schlemat and Area for use of excessive force, (2) Castellano for failure to protect Jaso from the alleged use of excessive force, or (3) Schlemat, Area, and Castellano for deliberate disregard of Jaso's serious medical needs. The state-law assault and battery claims alleged against Schlemat and Area in their individual capacities will also be permitted to proceed. All other claims alleged in the Amended Complaint will be dismissed without prejudice. Jaso's motion for appointment of counsel will be denied without prejudice.

Accordingly,

IT IS ORDERED:

1.      This action will proceed to process only on the following individual-capacity claims: (1) a § 1983 claim against Defendants Schlemat and Area for use of excessive force; (2) a § 1983 claim against Defendant Castellano for failure to protect Plaintiff from the alleged use of excessive force; (3) a § 1983 claim against Defendants Schlemat, Area, and Castellano for deliberate disregard of Plaintiff's serious medical needs; and (4) state-law claims against Defendants Schlemat and Area for assault and battery.

2.      All other claims alleged in the Amended Complaint against Defendants Schlemat, Area, and Castellano, in their individual or official capacities, or against unknown, unnamed Defendants, are dismissed without prejudice.

3.      Plaintiff's motion for appointment of counsel (Filing 17) is denied without prejudice to reassertion.

4.      Plaintiff's motion for issuance of summonses (Filing 18) is denied.

5.      The clerk of court is directed to complete and issue summonses for Defendants Schlemat, Area, and Castellano, in their individual capacities only. These Defendants may be served at the office of the Dawson County Sheriff, 709 N Grant St, Lexington, NE 68850. The clerk of court is further directed to deliver the summonses, the necessary USM-285 Forms, copies of Plaintiff's Amended Complaint (Filing 16), and copies of this Memorandum and Order to the Marshals

31

Service for service of process on Defendants. Service may be accomplished by using any of the following methods: personal, residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016).[12]

7.     The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

8.     Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

9.     The clerk of court is directed to set the following pro se case management deadline: July 20, 2020: check for completion of service of process.

Dated this 20th day of April, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

---

[12] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson,* 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory). *See, e.g., Beyer v. Pulaski County Jail*, 589 Fed. Appx. 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the Jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).